# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-20-78-RAW |
| ) | |
| PATRICK DWAYNE MURPHY, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The Defendant Patrick Dwayne Murphy has been charged in a superseding indictment with murder in Indian Country, in violation of 18 U.S.C. §§ 1111(a), 2, 1151, &1153; murder in Indian Country in perpetration of kidnapping, in violation of 18 U.S.C. § 1111(a), 2, 1151, and 1153; and two counts of kidnapping resulting in death, in violation of 18 U.S.C. §§ 1201(a)(2), 2, 1151, & 1153. The Defendant now seeks suppression of statements that he made after being arrested. The Defendant's Motion for *Jackson v. Denno* Hearing, and to Suppress Custodial Statements [Docket No. 36] was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(2)(B). The undersigned Magistrate Judge granted the request for a *Jackson v. Denno* hearing, which was conducted on Friday, November 20, 2020. For the reasons set forth below, the undersigned Magistrate Judge now hereby recommends that the motion to suppress be DENIED.

### Background

The events surrounding this case occurred back in 1999 during an Oklahoma state

investigation into a homicide.[1]  The parties agree that at the time in question the Defendant had been arrested and placed in an interview room in the Eufaula Police Department on August 29, 1999.  Oklahoma State Bureau of Investigation (OSBI) Agent John Jones testified at the suppression hearing that the Defendant had been arrested in the early morning hours before it was light, on August 29, 1999 and that they began the interview of him around 5:00 p.m. the same day.  Agent Jones testified that he had been present at the arrest of the Defendant, and that the Defendant, who admitted to drinking the night before, seemed disoriented at the time of arrest due to the police presence that woke him. Agent Jones testified that he, along with Agent Bob Harshaw, interviewed the Defendant that evening for about an hour.  Agent Jones stated that both he and Agent Harshaw were each wearing polo-type shirts, pants, and law enforcement badges, along with a gun on their hip, but that neither of them removed their guns from the holster at any time during the interview and never brandished their weapons.

The audio of the interview was recorded, and a transcript was made of the interview. *See* Gov't Ex. 2.  Additionally, the agents obtained a signed *Miranda* waiver from the Defendant, and the Defendant does not challenge the authenticity of the waiver.  *See* Gov't Ex. 1.   At the beginning of the interview, the transcript reflects that Agent Jones informed

---

[1] The Defendant was originally tried, convicted, and sentenced to death for the crimes that are the subject of this case.  On July 9, 2020, the Supreme Court, citing the recent decision in *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), affirmed the Tenth Circuit's decision in *Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017), which held that Oklahoma state courts lacked jurisdiction over the Defendant because the crime occurred on Indian land, was governed by clearly established federal law, and the Oklahoma state court lacked jurisdiction to prosecute the defendant for a murder that occurred on an Indian reservation that had not been disestablished.  *See Sharp v. Murphy*, 140 S. Ct. 2412 (2020) (per curiam).

-2-

the Defendant that he was under arrest for the murder of George Jacobs. Gov't Ex. 2, p. 60.[2] The Defendant denied murdering anyone, and Agent Jones stated, "I need to read this off to you[,] and continued:

> **Jones**: I wish to advise you, that you have an absolute right to remain silent. That anything you say, can and will be used against you in a court of law. Okay. You have the right to talk to an Attorney, before, and have an Attorney present with you during questioning. That if you cannot afford to hire an Attorney, one will be appointed to represent you without charge before any questioning if you so desire. If you decide to answer any questions. You may stop any time you wish. Do you understand what I just read to you? Okay. You initial this right here for me. That I read you that. Just put your initials right there. Okay. Reading on here. I fully understand the statement advising me of my rights. And I'm willing to answer questions. I do not want an Attorney. And I understand that I may refuse to answer questions at any time during questioning. No promises have been made to me nor has any threats been made against me. Do you wish to talk to us?
> **Murphy**: Well, it ain't no difference cause I ain't done anything.
> **Jones**: Do you want to talk to us? Yes or no?
> **Murphy**: Well, I can't answer that question right now. I don't know this, this, this[.] I'm not for sure if I'm gonna have an attorney.
> **Jones**: This is your Miranda Rights.
> **Murphy**: Right.
> **Jones**: It is your right to have an attorney. Do you want one or do you want to talk to us? It's your choice. Do you want an attorney yes or no?
> **Murphy**: Well, can I still talk to ya'll and still have an attorney present?
> **Jones**: Do you want, you want an attorney? You can have an attorney. If not, you can talk to us right now. It's your choice. I can't tell you what to do.
> **Murphy**: I mean, I mean, you['re] saying I can't do both?
> **Jones**: Yeah. Eventually sure. If you want an attorney we'll get you an attorney. If that's what your [sic] saying.
> **Murphy**: What I'm saying, I probably won't have an attorney, but, still yet, I'm, I'm gonna talk to ya'll too, if that's what ya'll want. You see what I'm saying.
> **Harshaw**: What, what this is Patrick it's, it's uh – is your, advising you of your –
> **Murphy**: Yeah I – I fully –

---

[2] The pages of the transcript are in numerical order beginning at page 60.

-3-

> **Harshaw**: Miranda Rights.
> **Murphy**: I fully understand this.
> **Jones**: Well just, just listen to Agent Harshaw.
> **Murphy**: Okay.
> **Harshaw**: Gotta to have an Attorney present while we talk to you. And uh – what, what the bottom portion of that, that sheet is, is a waiver of that, that just simply states that your [sic] willing to talk to us now, without an Attorney present. And if your [sic] willing to do that, you agree, and you sign the waiver. If, if, you don't agree with that, you don't' [sic] want to talk to us, without an Attorney present, that's fine. I'm [sic] mean all you have to say, is I, I don't want to talk to you right now. But, you know, this is saying yes I'm willing to talk to you without an Attorney present.
> **Murphy**: Mh –
> **Harshaw**: Simple as that.
> **Murphy**: Yeah, I'm willing to talk.
> **Jones**: Do you want to talk to us without an Attorney present?
> **Murphy**: Yes.
> **Jones**: Okay. Then just sign right here for me. All that is, is saying, that, I read you this and your [sic] willing to talk to us without an Attorney present. Okay. And like I said, you know what your [sic] under arrest for. Okay.
> **Murphy**: Yes.

Gov't Ex. 2, pp. 60-63. During the interview, the Defendant then confessed to participating in the mutilation and murder of George Jacobs.

Agent Jones testified at the suppression hearing that, to the best of his knowledge, the Defendant's waiver of *Miranda* rights was made knowingly, voluntarily, and intelligently.

**Analysis**

The Defendant has moved to suppress any statements made by him during his interview with Agents Jones and Harshaw, arguing that he was not properly given his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), that he did not effectively waive his rights to silence and counsel under the Fifth and Sixth Amendments, and that his statements were

not voluntary because they were produced by threats and/or coercion (either express or implied) and/or promises of lenient or favorable treatment if he told the authorities what they wanted to hear.[3]  The Government contends that the Defendant knowingly, voluntarily, and intelligently confessed after a proper *Miranda* warning.  For the reasons set forth below, the undersigned Magistrate Judge agrees that the Defendant was properly advised of his rights, and that his statements were given voluntarily.

Here, the parties all agree that the Defendant was clearly in custody, having been arrested earlier in the morning and held at the Eufaula Police Department for questioning. Moreover, the transcript of the interview reflects that Agents Jones and Harshaw read the Defendant his *Miranda* rights; thus, the remaining question is whether the Defendant's waiver of his *Miranda* rights was given knowingly, voluntarily, and intelligently. *Miranda*, 384 U.S. at 444 ("The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently."). *See also Jackson v. Denno*, 378 U.S. 368, 394 (1964) (holding that a Defendant is entitled to have an evidentiary hearing on the voluntariness of a confession before his case is tried to a jury).  And "[a]n express written or oral statement or waiver by a defendant of his right to remain silent or of the right to legal assistance of counsel, though not conclusive, is 'usually strong proof

---

[3] At the suppression hearing, the Defendant also raised for the first time a challenge to the legality of his arrest.  As the issue had not been properly raised prior to the hearing, and therefore not properly briefed or referred to the undersigned Magistrate Judge, the undersigned Magistrate Judge declined to hear argument and testimony on this issue and instructed the Defendant to properly request leave from the Chief District Judge assigned to this case to raise the issue. The undersigned Magistrate Judge notes that those motions have now been filed but are not referred.  *See* Docket Nos. 70, 74, 90.

of validity of that waiver.'" *United States v. Hack*, 782 F.2d 862, 866 (10th Cir. 1986) (*quoting North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

In order to find a Defendant's statements were involuntary, there must also be a finding of "coercive police action." *United States v. Minard*, 208 Fed. Appx. 657, 660 (10th Cir. 2006) (citations omitted). In this case, the Defendant was specifically read his *Miranda* rights more than once, and also informed that he did not have to speak to Agents Jones and Harshaw, although they did question his truthfulness several times during the interview. Moreover, the interview lasted approximately an hour and five minutes, and was therefore not excessively long. Nor was the interview unduly coercive. Agents Jones and Harshaw were both armed, but they were not in uniforms and did not threaten the Defendant. The undersigned Magistrate Judge therefore finds that the officers did not engage in threat or coercions and the Defendant's *Miranda* waiver was voluntary under the totality of the circumstances. *See United States v. Chalan*, 812 F.2d 1302, 1307 (10th Cir. 1987) ("In assessing the circumstances that surround a suspect's responses to interrogation, the Supreme Court has looked at a number of factors, including the age, education, and intelligence of the suspect, the length of his detention and the questioning, and the use of physical punishment. In no case, however, is any single factor determinative.").

A finding of coercive police action is not required, however, as to whether a waiver was knowing or intelligent. *Minard*, 208 Fed. Appx. at 660. Rather, to find a waiver was knowing and/or intelligent, the "waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon

it[,]" and is to be evaluated under the totality of the circumstances. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). *But see Colorado v. Spring*, 479 U.S. 564, 574 (1987) ("The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege."). And here, the Defendant contends that his statements produced by promises of lenient or favorable treatment. "An inculpatory statement, to be admissible, must be made voluntarily and of the defendant's free will." *Minard*, 208 Fed. Appx. at 660 (*citing Colorado v. Connelly*, 479 U.S. 157, 167 (1986). At the suppression hearing, Defendant's counsel went through the transcript of the 1999 interrogation and pointed out numerous places in which the Agents told the Defendant to stop lying, told him they wanted the truth, characterized the interview as an "opportunity" for the Defendant, and that they were trying to help the Defendant. *See generally*, Gov't Ex. 2. "[M]erely exhorting the defendant to start telling the truth does not render his confession involuntary." *United States v. Garcia*, 52 F. Supp. 2d 1239, 1255, (D. Kan. 1999) (*citing, inter alia*, *Chalan*, 812 F.2d at 1307). Agent Jones testified that he did not imply or promise leniency to the Defendant during the interview, that he in fact made no promises to the Defendant, and that the opportunity he repeatedly referred to was simply the opportunity to tell the truth, and the undersigned Magistrate Judge agrees that Agent Jones did not promise leniency nor was there evidence the Defendant reasonably believed a promise of leniency had been made. *United States v. Lujan*, 2008 WL 11359110, at *5 (D. N.M. June 26, 2008) (*citing United States v. Garot*, 801 F.2d 1241, 1422-1245 (10th Cir. 1986)). Agent Jones had stated that he wanted the truth so that he

could determine what actually happened, and there is no evidence or testimony to the contrary. *Compare with Lujan*, 2008 WL 11359110, at *6 (finding promises of leniency had been made where officers suggested to Defendant that he could get a maximum sentence of thirty years, instead of life without parole, by helping them).

Finally, the Defendant attempts to assert that the waiver was improper because he lacked the education or intelligence, questioning whether the Defendant was sober and noting that at the sentencing phase of the Defendant's state court trial there was some question as to whether the Defendant was "educably mentally handicapped." Here, although the Defendant had been drinking the night before, the Defendant had been in custody since the early morning hours and there is no evidence that he remained intoxicated at the time of the interview, around 5:00 p.m. that evening. Furthermore, Agent Jones stated that he had dealt with intoxicated persons and the Defendant did not appear intoxicated, nor did he appear to have physical *or* mental disabilities. *See United States v. Burson*, 531 F.3d 1254, 1258 (10th Cir. 2008) ("[A] defendant must be impaired to a substantial degree to overcome his ability to knowingly and intelligently waive his privilege against self-incrimination. Where the government puts forth evidence showing the defendant was sufficiently in touch with reality so that he knew his rights and the consequences of abandoning them, the defendant must point to facts sufficient to overcome that showing. The mere fact of drug or alcohol use will not suffice."). As to his intelligence, other than allusions by defense counsel during cross examination, there is nothing in the record before the undersigned Magistrate Judge to suggest that the

Defendant's intelligence was so low he could not understand what was happening. Indeed, Agent Jones testified that the Defendant did not appear mentally constrained and was able to answer the questions that they asked of him. Likewise, the Defendant attempts to characterize the Agents' statements to the Defendant as creating a false dichotomy between talking to them without an attorney or having an attorney (and never being able to talk to them), but the undersigned Magistrate Judge finds that the Agents' explanations, as set forth above, did not misinform the Defendant. Furthermore, the undersigned Magistrate Judge finds Agent Jones's testimony credible when he stated that the Defendant appeared to understand his rights and provided coherent answers. *United States v. Officer*, 1994 WL 723966, at *3 (D. Kan. Dec. 14, 1994) ("The court finds credible the officers' testimony that defendant gave reasonable, appropriate, and coherent answers to their questions and that he appeared to understand what was happening."). Accordingly, the undersigned Magistrate Judge has no difficulty concluding that the Defendant voluntarily, knowingly and intelligently waived his *Miranda* rights.

In summary, the undersigned Magistrate Judge finds that any statements made by the Defendant in response to questioning after his arrest and waiver of his rights under *Miranda*, should not be suppressed.

## Conclusion

Accordingly, the undersigned hereby PROPOSES the findings set forth above and RECOMMENDS that the Defendant's Motion for *Jackson v. Denno* Hearing and to Suppress Custodial Statements [Docket No. 36] be GRANTED to the extent the

undersigned Magistrate Judge held a *Jackson v. Denno* hearing, but otherwise DENIED. Any objections to this Report and Recommendation must be filed within fourteen (14) days.

    IT IS SO ORDERED this 21st day of December, 2020.

                                                _____

                                                **STEVEN P. SHREDER**
                                                **UNITED STATES MAGISTRATE JUDGE**