IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | Case No. CR-20-78-RAW |
| ) | |
| PATRICK DWAYNE MURPHY,    ) | |
| ) | |
| Defendant.    ) | |

### ORDER

Before the court is Defendant's Objections [Docket No. 94] to Magistrate Judge Shreder's Report and Recommendation [Docket No. 92] concerning Defendant Patrick Dwayne Murphy's Motion to Suppress Custodial Statements [Docket No. 36]. The Government has filed a response to Defendant's objections [Docket No. 97].

Under 28 U.S.C. § 636(b)(1)(B), the district court may designate a Magistrate Judge to hear certain pretrial motions, including a motion to suppress evidence in a criminal case. *United States v. Orrego-Fernandez,* 78 F.3d 1497, 1501 (10th Cir. 1996). Pursuant to Federal Rule of Criminal Procedure 59(b)(3), the district court must consider any objection de novo, and "may accept, reject, or modify the objection, receive further evidence, or resubmit the matter to the magistrate judge with instructions." An additional hearing is not, however, required. A district court is required to make a de novo determination, not to hold a de novo hearing. *United States v. Watkins,* 760 F.3d 1271, 1284 (11th Cir. 2014) (quoting *United States v. Raddatz,* 447 U.S. 667, 674 (1980)).

Defendant filed his Motion to Suppress seeking exclusion of statements he made while in the custody of Oklahoma State Bureau of Investigation Agents John Jones and Bob Harshaw. Agent Jones, who testified at the evidentiary hearing, indicated that he had been present at

Defendant's arrest early in the morning of August 29, 1999, as well as during Defendant's interrogation that began around 5:00 p.m. that same day.

Defendant objects to the Magistrate Judge's conclusions regarding whether Murphy was improperly induced into making inculpatory statements and whether he unequivocally requested an attorney such that the Agents' questioning of Defendant should have ceased [Docket No. 94, at 2–3].[1] Defendant does not appear to object to the Magistrate Judge's factual or credibility findings, only the legal determinations that arise from those findings. The Government argues that the Magistrate Judge properly found the Agents did not make promises of leniency and that Defendant did not unequivocally invoke his right to an attorney [Docket No. 97, at 5–10].

The court has reviewed the audio recording of the evidentiary hearing as well as the evidence submitted in the form of Defendant's signed waiver of *Miranda* rights and a transcript of Defendant's interrogation [Docket No. 66, Exhibits 1 & 2].

## I.   Offers of Leniency

Defendant argues that his statements to Agents Jones and Harshaw were coerced because the officers implied leniency in return for Defendant's inculpatory statements [Docket No. 94, at 2–3]. In support of his position, Defendant notes that he was intoxicated the night before his interrogation and "is of limited intelligence." [*Id.* at 2]. The Government asserts that none of the statements made by law enforcement officers during the interrogation promised leniency or could be reasonably understood to imply leniency [Docket No. 97, at 7–9]. Further, even if leniency could reasonably have been inferred, those promises of leniency were not the "but for" cause of Defendant's statements, nor were the promises coercive [*Id.*].

---

[1] The court notes that Defendant does not cite to any specific exchanges between Defendant and law enforcement during his interrogation that he considers objectionable or evidence supporting his position, even though the interrogation transcript is nearly one hundred pages long.

The Government bears the burden of demonstrating by a preponderance of the evidence that a suspect's statements were voluntarily made. *Missouri v. Seibert*, 542 U.S. 608 n.1 (2004). "Promises of leniency are 'relevant to determining whether a confession was involuntary and, depending on the totality of the circumstances, may render a confession coerced.' " *United States v. Young*, 964 F.3d 938, 943 (10th Cir. 2020) (quoting *Clanton v. Cooper*, 129 F.3d 1147, 1159 (10th Cir. 1997), *overruled on other grounds by Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007)). The parties agree that the test applicable to claims of coercion via offers of leniency is set out in *United States v. Garot*:

> First, was an express or implied promise of lenience made to defendant? Secondly, if no promise of lenience was made, did defendant reasonably believe that such a promise had been made? Thirdly, if a promise was made or if defendant reasonably believed that a promise had been made, was his statement induced by that promise in a "but for" sense? Fourthly, if a promise was made or if defendant reasonably believed that a promise had been made, and this promise or belief induced his statement in a "but for" sense, was the inducing promise coercive?

801 F.2d 1241, 1244–45 (10th Cir. 1986) (internal brackets and quotation marks omitted). The Tenth Circuit has characterized the test as ultimately asking whether the defendant was "so gripped by the hope of leniency that he did not or could not freely and rationally choose among the available courses of action." *United States v. Rodebaugh*, 798 F.3d 1281, 1293 (10th Cir. 2015) (internal quotation marks omitted). The test may also be understood as asking whether "a promise of leniency . . . was sufficiently compelling and linked to the confession so that it could be said that the defendant's will was overcome by the offer." *Clanton*, 129 F.3d at 1159. In resolving this matter, the court must consider the totality of the circumstances, including both the defendant's personal characteristics and the circumstances of the interrogation. *Id.* at 1291.

After reviewing the transcript of Defendant's interrogation and the audio of the Magistrate Judge's hearing, the court concludes that Agents Jones and Harshaw did not make any promises

3

of leniency, express or implied, and their statements could not reasonably be construed as promises of leniency. Even to the extent that such an understanding might have been possible, they did not overcome Defendant's will and coerce his confession.

Defendant specifically objects to the various instances in which the Agents told Defendant they were giving him an "opportunity" to tell the truth or his side of the story, as well as a few references to telling the District Attorney that Defendant had, or had not, been truthful during the interrogation [Docket No. 94, at 2]. It is true that the Agents repeatedly told Defendant they were giving him an "opportunity," but those statements were made in the context of telling Defendant he had an opportunity to tell the truth, or his side of the story, because the Agents had already spoken with other people [*See, e.g.,* Docket No. 66, Exhibit 2, at 81–87, 96, 100, 112]. The court concludes that these were mere exhortations by the Agents to tell the truth, not promises that Defendant would receive leniency if he told the truth. *See United States v. Garcia*, 52 F. Supp. 2d 1239, 1255 (D. Kan. 1999) (citing *United States v. Chalan*, 812 F.2d 1302, 1307 (10th Cir. 1987)). Further, although the Agents referenced talking to the prosecutor about Defendant's statements, including whether they perceived him as truthful [Docket No. 66, Exhibit 2, at 117 & 122], the Tenth Circuit has held that such statements do not render a confession coerced. *United States v. Lopez*, 437 F.3d 1059, 1064 (10th Cir. 2006) ("[T]his court has held that the fact that an officer promises to make a defendant's cooperation known to prosecutors will not produce a coerced confession"); *United States v. Lewis*, 24 F.3d 79, 82 (10th Cir. 1994) (holding that promises to make defendant's cooperation known to prosecutor was a "limited assurance [that] does not taint ensuing statements as involuntary"). The only statement that gives the court any pause came very late in the interrogation, when Agent Jones told Defendant, "[W]e got to have the truth. Okay. This is . . . for your benefit." [Docket No. 66, Exhibit 2, at 126]. But even this is little more than

a "vague and non-committal" statement that did not promise leniency. *See Rodebaugh*, 798 F.3d at 1293 (holding that officer telling defendant "If you work with us, we'll go easy on you," was vague, non-committal, and at most a limited assurance). Even taking all of these statements together over the course of the interrogation, the court concludes that the Agents did not make any promises of leniency. They were, at most, vague and non-committal limited assurances, which the Tenth Circuit has held "to be a permissible interrogation tactic." *Id.* These were not the kinds of statements that overcame Defendant's will or left him desperately clinging to the hope of leniency such that he could not make rational decisions. *See, e.g., Young*, 964 F.3d at 944–45 (concluding that officer's claims to suspect that he had spoken with a federal judge who reviewed the case, combined with promises that cooperation would "buy down" any prison sentence and that truthful answers would "tick[] time off" of his sentence, was coercive); *Lopez*, 437 F.3d at 1066 (holding that federal agents' promises to suspect that he would spend six years in prison, instead of sixty, if he admitted killing victim by mistake was improper offer of leniency that coerced confession); *United States v. Coriz*, Cr. No. 17-1105 JCH, 2018 WL 4222383, at *10 (D.N.M. Sept. 5, 2018) (finding that federal agent's statements minimizing the prospect of prison time, combined with significant fabrications concerning evidence and threats to tell local community that suspect failed polygraph test, rendered suspect's confession coerced).

      Neither Defendant's personal characteristics nor the circumstances surrounding his interrogation lead the court to a different conclusion. With respect to Defendant's personal characteristics, he claims that his low intelligence combined with his drunken state rendered him more susceptible to coercive tactics [Docket No. 94, at 2–3]. First, as to Defendant's purportedly low intelligence, the court has no meaningful evidence before it that would lead it to conclude that Defendant's intellectual capabilities are so limited that they influenced his ability to reason in light

of the officers' statements during his interrogation. The only evidence concerning Defendant's intelligence came from defense counsel cross-examining Agent Jones, who testified that Defendant did not appear to have any intellectual disabilities. Second, the court rejects the argument that Defendant's drinking the previous night continued to impair his ability to reason at 5:00 p.m. the following day. There is no evidence that Defendant was still intoxicated at all, let alone to any degree that would affect his reasoning capabilities, and Agent Jones testified that Defendant did not appear intoxicated during the interrogation.

Defendant raises no objection, and the court finds no reason to believe, that the circumstances of Defendant's interrogation render his statements to Agents Jones and Harshaw involuntary. The court notes that the interrogation lasted roughly seventy-five minutes, and Agents Jones and Harshaw were wearing polos and jeans, with their badge and gun on their hip.

Accordingly, Defendant's objection to the Magistrate Judge's Report and Recommendation is overruled with respect to the determination that Agents Jones and Harshaw did not coerce Defendant's statements.

**II.   Waiver of Rights**

Defendant further objects that officers violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant contends:

> The recording and testimony at the hearing showed that Mr. Murphy repeatedly stated he wanted both a lawyer and to talk to the authorities. Defendant stated he wanted both, and asked for both. Instead of suspending questioning until Mr. Murphy could consult with a lawyer, he was told that what he was asking for could not be done "now," or until later . . . . The record . . . shows that he asked unequivocally for a lawyer and the ability to talk to the authorities simultaneously. This request was not honored.

[Docket No. 94, at 3]. The court disagrees with Defendant's characterization of these exchanges.

6

After being read his *Miranda* rights, Defendant is initially non-committal regarding his desire for an attorney, saying he "can't answer that question right now," because he was "not for sure if [he was] gonna have an attorney." [Docket No. 66, Exhibit 2, at 61]. Defendant then asked if he could "still talk to ya'll and still have an attorney present," and Agent Jones followed this by asking Defendant if he wants an attorney [*Id.* at 62]. Agent Jones then explained that Defendant could have an attorney, but if he did not want one, then Defendant could talk to law enforcement "right now." [*Id.*]. Defendant then questioned whether he could do both—request an attorney and talk to law enforcement—to which Agent Jones responded, "Yeah. Eventually sure. If you want an attorney, we'll get you an attorney. If that's what you['re] saying." [*Id.*]. Defendant then stated that he probably would not have an attorney and wished to talk with law enforcement [*Id.*]. The officers then reiterated Defendant's right to have an attorney present during questioning and explained the waiver of *Miranda* rights sheet [*Id.* at 63]. After confirming that Defendant understood he could have an attorney present during questioning or proceed without an attorney present, Defendant definitively stated that he was "willing to talk" without an attorney present and signed the waiver sheet [*Id.*].

"[A] suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and . . . the police must explain this right to him before questioning begins." *Davis v. United States*, 512 U.S. 452, 457 (1994). This right to counsel is given special protection, and waiver of it is effective only if the waiver is intelligent and knowing. *Id.* at 458. However, a suspect does not invoke his right to counsel unless he does so unambiguously. *Id.* at 459. Statements concerning counsel that are ambiguous or equivocal are inadequate. *Id.* Where "a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," a suspect has not invoked his right

7

to counsel and questioning may continue. *Id.* Notably, the Tenth Circuit has held that answers regarding a desire for counsel that are "plainly and directly contradictory" neither invoke the right to counsel nor require clarifying questions to determine a suspect's intentions. *See United States v. Brown*, 287 F.3d 965, 972–73 (10th Cir. 2002) (concluding that suspect answering in the affirmative to questions asking both whether he wished to answer questions without an attorney and if he wanted to talk to a lawyer was ambiguous and did not trigger an invocation of his rights).

      Defendant did not unambiguously request counsel. At best, he ambiguously asked if he could both request an attorney and speak to the Agents. Agent Jones did not mislead Defendant in responding to that question by stating that he could eventually do so; that response was accurate given the nature and context of the question. Defendant repeatedly stated that he did not know if he would have an attorney but nonetheless wanted to speak with the Agents. The Agents reiterated that Defendant had a right to counsel and to not speak to them without an attorney present, and Defendant unequivocally stated that he was "willing to talk," and that he wanted to talk to the Agents without an attorney present. Defendant also signed a *Miranda* waiver [Docket No. 66, at Exhibit 1]. Even a very generous reading of the transcript indicates, at best, that Defendant *might* have been requesting an attorney. But a more realistic reading shows that Defendant was asking questions about the nature of his right to an attorney and ultimately determining that he did not wish to invoke it at that time. To the extent Defendant argues that his intelligence and drunkenness impacted his ability to knowingly and intelligently waive his rights, the court concluded in its earlier analysis that there is no evidence Defendant was still impaired at the time of his interrogation from his previous night of drinking, nor is there evidence that Defendant's purportedly low intelligence prevented him from understanding the nature of his rights or what

was taking place. As discussed above, Agent Jones testified that Defendant did not appear to be intoxicated or suffer any intellectual disabilities or difficulties at the time of his interrogation.

Accordingly, Defendant's objection to the Magistrate Judge's Report and Recommendation is overruled with respect to the determination that law enforcement did not violate Defendant's *Miranda* rights.

Therefore, it is the order of the court that the Report and Recommendation of the United States Magistrate Judge [Docket No. 92] is affirmed and adopted. Defendant's Motion to Suppress Custodial Statements [Docket No. 36] is granted, insofar as the Magistrate Judge held the requested hearing, but it is denied in all other respects.

**IT IS SO ORDERED** this 18th day of February, 2021.

_____
Ronald A. White
United States District Judge
Eastern District of Oklahoma