IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | Case No. CR-20-78-RAW |
| ) | |
| PATRICK DWAYNE MURPHY,   ) | |
| ) | |
| Defendant.   ) | |

**ORDER**

Before the court is Defendant Patrick Dwayne Murphy's Motion in Limine seeking exclusion of statements protected by marital privilege [Docket No. 73]. The Government has filed a response opposing the motion [Docket No. 85].

Defendant contends that, at the time of the alleged crimes set out in the indictment, he and Patsy Jacobs were common law spouses and statements he allegedly made to her are protected by marital privilege [Docket No. 73]. The Government responds that Defendant has not carried his burden to show that he and Patsy Jacobs were common law spouses, in that Defendant has provided no evidence that he and Jacobs mutually agreed to be married [Docket No. 85, at 6–8]. The Government also argues that the Muscogee (Creek) Nation does not recognize common law marriages [*Id.* at 6]. Finally, the Government argues that Murphy waived any privilege because he made similar statements to others in the days following the alleged murder [*Id.* at 8–9].

At the evidentiary hearing held on January 27, 2021, the Government elicited testimony from Oklahoma State Bureau of Investigation Agent John Jones indicating that he interviewed Defendant, Patsy Jacobs, one of Ms. Jacobs's co-workers, and a nephew of George Jacobs. Agent Jones testified that each of them indicated Defendant and Patsy Jacobs had a boyfriend and girlfriend relationship, rather than a husband and wife relationship.

Defendant here asks the court to find the marital communications privilege applies to his relationship with Patsy Jacobs such that he may prevent her from testifying about confidential communications he allegedly made to her prior to the death of George Jacobs. "[T]he burden of establishing the applicability of a privilege is on the party seeking to assert it." *United States v. Jarvison*, 409 F.3d 1221, 1231 (10th Cir. 2005). "The application of this privilege depends upon the existence, at the time of the communication in question, of a valid marriage as determined by applicable state law." *United States v. Staggs*, 881 F.2d 1546, 1549 (10th Cir. 1989). Under Oklahoma law, the person seeking to prove a common law marriage has the burden to show its existence by clear and convincing evidence. *Standefer v. Standefer*, 26 P.3d 104, 107 (Okla. 2001). Notably, where a tribal government "retains sovereign authority to regulate domestic relations laws, including marriage . . . [tribal] laws [are] dispositive as to the validity of the marriage in question."[1]  *Jarvison*, 409 F.3d at 1225.

I.   **Muscogee (Creek) Nation and Common Law Marriage**

The Government contends that Defendant is a member of the Muscogee (Creek) Nation while Patsy Jacobs is a member of the Tohono O'Odham Nation and that any marriage between them is governed by the Muscogee (Creek) Nation's laws [Docket No. 85, at 6]. The Government has not provided citation to any law specifically indicating that a particular nation's laws regarding marriage apply in place of state law when the individuals are members of two separate Native American nations.[2]  However, Defendant did not contest this position at the evidentiary hearing and essentially conceded the applicability of Muscogee (Creek) law to this case.

---

[1] Defendant does not assert that the Muscogee (Creek) Nation lacks this authority.

[2] The Government cites *Jarvison* for the assertion that "[w]hen the alleged marriage is between two tribal members who live within the boundaries of a reservation, tribal law governs the relationship." [Docket No. 85, at 6]. But this is not precisely what *Jarvison* said, and *Jarvison* said nothing about tribal law governing a relationship between members of two separate nations. *See Jarvison*, 409 F.3d at 1225

Title 6, Chapter 2, of the Muscogee (Creek) Nation's legal code governs marriage. Section 2-105 states: "No person shall enter into or contract the marriage relation . . . without a license being first issued by the Court Clerk or by other licensing authority under the law of any other jurisdiction, authorizing the marriage between the persons named in such license." M(C)NCA Title 6, § 2-105. Section 2-108 further requires "[p]ersons desiring to be married in the Muscogee (Creek) Nation shall submit an application in writing signed and sworn to in person before the Court Clerk by both of the parties" that provides various personal details ensuring eligibility of the two individuals to marry. *Id.* at § 2-108.

Taking these two statutory provisions together, it seems apparent that the Muscogee (Creek) Nation rejects common law marriage as a valid method of marriage. Thus, to the extent tribal law governs this relationship, no common law marriage between them could exist. As such, Defendant cannot exercise the marital communications privilege to prevent Patsy Jacobs from testifying about certain things he allegedly told her.

**II.     Oklahoma and Common Law Marriage**

If, however, tribal law does not apply, then Oklahoma's laws apply and govern whether Defendant and Patsy Jacobs entered into a common law marriage. In Oklahoma, "[a] common law marriage is formed when the minds of the parties meet in consent at the same time." *In re Estate of Whitehouse*, --- P.3d ---, 2020 OK CIV APP 59 ¶ 17 (Okla. Ct. Civ. App. 2020) (quoting *Standefer*, 26 P.3d at 107). There are five elements courts must consider: "(1) an actual and mutual agreement between the spouses to be husband and wife; (2) a permanent relationship; (3) an exclusive relationship; (4) proved by cohabitation as man and wife; (5) and the parties to the marriage must hold themselves out publicly as husband and wife." *Id.* However, only the first

3

element *must* be proven, while the remaining four elements serve as evidence tending to prove the first. *Id.* at ¶ 18.

According to Agent Jones's testimony, during his interview with Defendant Murphy, Defendant described his relationship with Patsy Jacobs as one of boyfriend and girlfriend, not husband and wife. Interviews with Patsy Jacobs, one of Jacobs's co-workers, and George Jacobs's nephew each elicited similar descriptions of the relationship. During cross-examination, Agent Jones testified that he was aware the Oklahoma state court made findings that Defendant and Patsy Jacobs lived together and shared a checking account. Assuming those findings were correct—the court has no evidence before it suggesting they were—the court nonetheless concludes that the apparent repudiation of a spousal relationship by both Defendant and Patsy Jacobs in interviews with law enforcement cuts deeply against finding that they entered into an actual and mutual agreement to be married as husband and wife. The fact that those around them also characterized their relationship as one of boyfriend and girlfriend, rather than spouses, further pushes against the notion that they had a mutual agreement to be married. Additionally, Patsy Jacobs choosing to continue using the surname Jacobs, instead of Murphy, reinforces this conclusion.

Defendant, who bears the burden of proving by clear and convincing evidence that he and Jacobs were married at common law, submitted no evidence on the matter beyond the questions he asked on cross-examination.[3] Therefore, the court finds that Defendant has not carried his burden to show that the marital communications privilege applies to Patsy Jacobs's testimony.

Accordingly, Defendant Patrick Dwayne Murphy's Motion in Limine [Docket No. 73] seeking exclusion of statements protected by marital privilege is hereby DENIED.

---

[3] Defendant asserted in his oral argument that both Defendant and Patsy Jacobs testified at his state court trial that they were married. The court has no evidence before it of such testimony other than Defendant's counsel's assertion. But even if it did consider that testimony, the court's conclusion would not change because it would find such testimony lacking in credibility in light of the statements made during interviews with law enforcement officers.

**IT IS SO ORDERED** this 18th day of February, 2021.

_____
Ronald A. White
United States District Judge
Eastern District of Oklahoma